UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANA BLAKE**, | Civil Action |
| Plaintiff, | No. 20-13603 (CPO) |
| v. | |
| **ALSTOM TRANSPORTATION INC.**, | **OPINION** |
| Defendant. | |

**Appearances:**

Jamie L. Ford
SIDNEY L. GOLD & ASSOCIATES, P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103

Leanne Lane Coyle
POST & SCHELL, P.C.
Four Penn Center
1600 John F. Kennedy Blvd., 14th Floor
Philadelphia, PA 19103

 *On behalf of Plaintiff Dana Blake.*

Daniel M. Young
Amy L. Hansell
WARD GREENBERG
701 East Gate Drive
Suite 220
Mount Laurel, NJ 08054

 *On behalf of Defendant Alstom Transportation Inc.*

**O'HEARN, District Judge.**

I. **INTRODUCTION**

Presently pending before the Court is a Motion for Summary Judgment by Defendant Alstom Transportation Inc., (ECF No. 38), as to all claims in Plaintiff Dana Blake's Complaint. The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the following reasons, Defendant's Motion for Summary Judgment, (ECF No. 38), is granted in part and denied in part.

II. **BACKGROUND**[1]

Plaintiff was employed by Defendant as a Service Technician and later a Lead Service Technician from September 2015 to his termination on July 29, 2019. (SOMF, ECF No. 38-3 ¶ 2). On May 28, 2019, or May 29, 2019, Plaintiff notified his employer that his mother had been hospitalized and diagnosed with cancer. (SOMF, ECF No. 38-3 ¶¶ 4, 33, 34). Plaintiff testified that his mother was the primary caregiver for his grandmother, and he took time off work to care for them both. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶¶ 14, 15, 17). Plaintiff's mother died on June 8, 2019, and he notified his supervisor of same. (SOMF, ECF No. 38-3 ¶¶ 7, 18). Following his mother's death, Plaintiff remained out of work through July 29, 2019 when he was terminated. (SOMF, ECF No. 38-3 ¶¶ 8, 10). Throughout this time, Plaintiff was communicating his need to care for his grandmother and handle his mother's estate to his supervisor. (SOMF, ECF No. 38-3 ¶¶ 30, 31). Plaintiff's supervisor did not respond to the many messages Plaintiff sent. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶ 29). Plaintiff's grandmother was 103 years old at the

---

[1] Failure to follow Local Rule 56.1 usually results in dismissal of the motion. Here, Plaintiff failed to properly set forth his counterstatement of material facts as required by Local Rule 56.1. Despite the inclusion of facts in paragraph form and as a part of his opposition brief, Defendant was able to respond thereto and, therefore, the Court will not reject the motion for failure to conform to Local Rule 56.1. The Court cites Defendant's numbered responses to Plaintiff's counterstatement of material facts, (ECF No. 45-1), for clarity, because Plaintiff's counterstatement of material facts is not in numbered form.

time, required assistance moving around the home, and took medication for hypertension, heart failure, and depression. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶ 32; Pla. Opp., ECF No. 42-13 Exh K ¶¶ 2, 3).[2]

Plaintiff's supervisor first contacted human resources regarding Plaintiff's absences on June 25, 2019, then again on July 3, 2019. (SOMF, ECF No. 38-3 ¶¶ 53, 54). As a result of these communications, human resources initiated the termination process and advised Plaintiff that he was terminated on July 29, 2019 for "excessive absences." (SOMF, ECF No. 38-3 ¶¶ 55–57).

During the entirety of Plaintiff's employment, Defendant maintained a Family and Medical Leave Act ("FMLA") Policy. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶ 6). At no time before or after Plaintiff's mother died did his supervisor notify him of his need to contact human resources or Defendant's third-party benefit's administrator to seek FMLA leave. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶ 22, 49). Nor did Defendant or Plaintiff's supervisor notify Plaintiff that he needed to return to work. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶ 42). In fact, Plaintiff's supervisor never informed Plaintiff that his any of his absences were unexcused. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶ 45). Defendant's time record system reflects that Plaintiff's absence between May 29, 2019 and July 21, 2019 were designated "excused unpaid," and Plaintiff was not notified when his leave designation was changed to "unexcused" on and after July 22, 2019. (Def. Response to Pla. SOMF, ECF No. 45-1 ¶¶ 46-47).

---

[2] This information was provided by way of Plaintiff's affidavit. (Pla. Opp., ECF No. 42-13 Exh K). Defendant disputes this fact, citing Plaintiff's interrogatory response where he stated that his grandmother had not received any medical attention between May and July of 2019. (Young Cert., ECF No. 38-12 Exh H ¶ 10).

3

### III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Baymont Franchise Sys. v. SB Hosp. Palm Springs, LLC*, No. 19-06954, 2022 WL 2063623, at *3 (D.N.J. June 8, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346.

To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50); *see Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) ("[A] party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations."). However, "[if] reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *Anderson*, 477 U.S. at 250–51.

## IV. DISCUSSION

Plaintiff's Complaint alleges a single count of interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). The Court finds after his mother's death on June 8, 2019, Plaintiff was not entitled to leave because his grandmother—for whom he was caring at the time—is not a qualifying individual under the FMLA. This does not, however, nullify Plaintiff's claims entirely. Because it is undisputed that Plaintiff was entitled to leave under the FMLA for the time he cared for his mother before her death on June 8, 2019, Plaintiff has set forth sufficient facts from which a jury could find interference with and/or retaliation for exercising his rights to take such leave.

### A. The FMLA

The primary purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) and (2). The FMLA endeavors to accomplish these purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

The FMLA is comprised of two parts. *See Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). The first is generally referred to as "interference" and prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1). The second is referred to as "retaliation" and prohibits employers from "discharge[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful." 29 U.S.C. § 2615(a)(2). "An interference claim requires proof that the employer denied the employee FMLA rights to which [he] was entitled; a retaliation claim requires proof of discriminatory or retaliatory intent." *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012). "[F]iring an employee for a valid request for FMLA leave may constitute

5

interference with the employee's FMLA rights as well as retaliation …." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

Plaintiff alleges both an interference and retaliation claim. Under both claims, Plaintiff must show that he was entitled to FMLA-qualifying leave. *See Erdman*, 582 F.3d at 509 ("[F]iring an employee for a **valid request** for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation….") (emphasis added); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012) ("An interference claim requires proof that the employer denied the employee FMLA rights to which she was entitled."); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001) ("[T]he district court correctly required [the plaintiff] to prove that she was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered.")

**B. Plaintiff was not entitled to any rights under the FMLA for the time after his mother's death because he did not show that his grandmother had a serious health condition**

Defendant contends that Plaintiff was not entitled to FMLA benefits during the time in which he was caring for his grandmother because he has not shown that his grandmother had a serious health condition. The Court agrees.

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period" "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(c). FMLA defines a "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Here, it is undisputed that Plaintiff's grandmother did not receive in-patient care so he must show that she was undergoing continuing treatment by a health care provider for a chronic

6

condition. "A regimen of continuing treatment includes, for example, a course of prescription medication . . . ." 29 U.S.C. § 825.113(c). "[T]reatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient." 29 U.S.C. § 825.113(c). "Whether a condition involves 'continuing treatment' may be assessed a number of different ways, including the duration of the incapacity and the number of treatments within a specified period or whether treatment by a health care provider resulted in a supervised regiment of continuing treatment." *Honauer v. N. Jersey Truck Ctr.*, No. 19-8947, 2020 WL 5422824, at *4 (D.N.J. Sept. 10, 2020) (quoting 29 C.F.R. § 825.115(a)).

However, the Third Circuit has stated that "lay testimony, by itself, [is not] sufficient to create a genuine issue of material fact [as to the serious health condition]. Some medical evidence is necessary to show that [a plaintiff's] incapacitation was 'due to' the serious health condition." *Schaar v. Lehigh Valley Health Servs., Inc.*, 598 F.3d 156, 161 (3d Cir. 2010) (quoting 29 C.F.R. § 825.114). For example, in *Matthews v. Univ. of Pennsylvania Health Sys.*, an employee requested FMLA leave to care for her mother and provided her own lay opinion to explain her mother's serious health condition. No. 20-4295, 2022 WL 4624752, at *3 (E.D. Pa. Sept. 30, 2022). The employee testified that her mother had osteoporosis and neuropathy, was wheelchair bound, and needed assistance using the bathroom, bathing, and moving around. *Id*. The employee also provided a doctor's note that confirmed the diagnosis and the mother's need for care during periodic "flare ups" but failed to "provide information . . . as to the frequency and duration of the flare ups, any regimen of continuing treatment, whether follow-up treatments were required, and whether the patient would require care on an intermittent or reduced schedule basis." *Id*. at 4. The Court found that the employee's failure to "put forth any medical records or opinions regarding

7

her mother's conditions" was fatal to her claim as her lay opinion evidence was not sufficient to show that her mother had a serious health condition and, relatedly, that the employee was entitled to FMLA leave to care for her. *Id*.

Plaintiff's case suffers from the same fatal flaw. Plaintiff has failed to set forth sufficient medical evidence to show that his grandmother had a serious health condition. Based on Plaintiff's interrogatory response, his grandmother saw no medical professionals in the three months between May and July of 2019.[3] This lack of contact with the health care system is in contrast to the regular treatments often found to evidence serious medical conditions. *Phinizy v. Pharmacare*, 569 F. Supp. 2d 512, 521–22 (W.D. Pa. 2008) (collecting cases). Further, Plaintiff produced no medical records for his grandmother, no certification from a health care professional, or any other documentary or testimonial evidence in as to her medical condition. Instead, Plaintiff relies exclusively on an affidavit in which he states that his 103-year-old grandmother suffers from hypertension, heart failure, depression, and age-related mobility issues, for which she takes medication. (Ford Cert., ECF No. 42-13 Exh. K ¶ 3). This lay opinion—absent any supportive medical evidence—is not sufficient for Plaintiff to create a genuine issue of material fact. *Schaar*, 598 F.3d at 161. For these reasons, Plaintiff fails to show that his grandmother suffered a serious health condition which would entitle him to FMLA benefits for the time period after his mother died. Therefore, the viability of Plaintiff's interference and retaliation claims hinge on his undisputedly FMLA qualifying leave for the care of his mother.

---

[3] Plaintiff's response to Defendant's interrogatories identified no doctors, hospitals, hospice services, or other medical facilities from which his grandmother received care between May 2019 and July 29, 2019. (Young Cert., ECF No. 38-12 Exh H ¶ 10).

## C. Interference Claim

To prevail on an FMLA interference claim, an employee must prove that (1) he was entitled to benefits under the FMLA; and (2) he was denied them. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012). The interference inquiry is merely about whether the employer provided its employee with the entitlements and protections guaranteed by the FMLA. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (3d Cir. 1998).

The parties do not dispute that Plaintiff was entitled to FMLA-qualifying leave when he was caring for his mother for the time period before her death on June 8, 2019. (Def. Br., ECF No. 38 at 20). Plaintiff contends that Defendant interfered with his FMLA rights by failing to satisfy the individualized notice requirement under the FMLA. The Court agrees.

The FMLA's requirement that employers inform employees of their rights under the Act is intended "to ensure that employers allow their employees to make informed decisions about leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 144 (3d Cir. 2004) (quoting *Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp. 2d 377, 379–80 (D.N.J. 2001)). Failure to provide this notice can constitute an interference claim. *Id*. at 144–45; *see Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, at 319–22 (3d Cir. 2014) (vacating the district court's grant of summary judgement to the employer because a genuine issue of material fact existed as to whether an employee received the letter indicating that her leave was covered by FMLA).

Employers must provide employees with both general and individual notice about FMLA rights. *Lupyan*, 761 F.3d at 318. General notice requirements are satisfied by a posted notice of FMLA rights on the premises and an employee handbook or similar equivalent. *See* 29 C.F.R. §§ 2619(a), 825.300(a). To satisfy the specific notice requirement, employers must give employees

9

individual written notice that an absence is covered by FMLA. *Conoshenti*, 364 F.3d at 142; *see* 29 C.F.R. § 825.300(b). Therefore,

> once an employer is on notice that an employee is taking FMLA-qualifying leave, the employer must: (1) within five business days notify the employee of his or her eligibility to take FMLA leave, (2) notify the employee in writing whether the leave will be designated as FMLA leave, (3) provide written notice detailing the employee's obligations under the FMLA and explaining any consequences for failing to meet those obligations, and (4) notify the employee of the specific amount of leave that will be counted against the employee's FMLA leave entitlement.

*Lupyan*, 761 F.3d at 318 (internal citations omitted); *see* 29 C.F.R. § 825.300.

A plaintiff must also show that he was prejudiced by the lack of notice. Prejudice occurs when the employer's failure to advise the plaintiff of his FMLA rights "rendered [plaintiff] unable to exercise [the right to leave] in a meaningful way, thereby causing injury." *Conoshenti*, 364 F.3d at 143.

Here, there is no evidence in the record that Plaintiff was provided any notice at the outset of his leave, when he first notified his supervisor that his mother was hospitalized nor when he notified his supervisor that his mother was diagnosed with cancer. (SOMF, ECF No. 38-3 ¶ 13). Defendant simply ignores this issue and obligation as if it did not exist. While Defendant spills significant ink defending its—albeit correct—opinion that it was not required to notify Plaintiff that his FMLA leave terminated upon the death of his mother, *Fatima v. Lab'y Corp. of Am.*, No. 4-5739, 2006 WL 2990372, at *5 (D.N.J. Oct. 18, 2006), this does not excuse its failure to provide the initial individualized notice to Plaintiff that he in fact qualified for FMLA leave, the terms of such leave, and his obligations related to such leave. Defendant's reliance on cases granting summary judgment to employers where employees fail to return to work after the expiration of their leave—following the death of their family members or other reasons—is misplaced. The critical difference is that the employees in those cases were on notice of their obligation to return

to work *because they received individualized notice* of their rights under the FMLA from their employer when they first requested leave. *See Fatima*, No. 4-5739, 2006 WL 2990372, at *2 (the employer contacted the employee on November 4th to inform her that her FMLA request was granted and again on November 18th advising her that she must return to work); *Tighe v. Arconic Inc.*, No. 19-2185, 2021 WL 2177508, at *2, 5 (D.N.J. May 28, 2021) (employee received an eligibility notice explaining that she was approved for FMLA-qualifying leave and "was told repeatedly that her leave expired on December 8, 2016.").

Defendant argues that its obligation to provide individualized notice was not triggered because Plaintiff did not follow Defendant's specific procedure for requesting FMLA leave set forth in its employee handbook. (Def. Reply Br., ECF No. 45 at 7–8). Defendant's policy requires employees seeking FMLA leave to notify both their supervisor and a designated leave of absence administrator, which Plaintiff here did not do. (Ford Cert., ECF No 42-5 Exh. C ¶ 6).

The Court finds that the question of whether Plaintiff's notice as to his need for FMLA leave related to his mother was sufficient to trigger FMLA requirements is admittedly a close call. On one hand, the FMLA requires an employee to comply with an employer's "usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. §§ 825.302(d), 825.303(c). Specifically, "[a]n employee . . . may be required by an employer's policy to contact a specific individual." § 825.302(d). The Court recognizes that Plaintiff did not comply with Defendant's requirement for requesting FMLA leave because he did not contact the designated leave of absence administrator. Nor does Plaintiff challenge the validity of Defendant's policy and it is clear that the policy itself does not violate the FMLA. Finally, this requirement was detailed in Defendant's handbook which Plaintiff undisputedly received at the onset of his employment.

On the other hand, however, cases granting summary judgment to employers based upon the employee's failure to follow the usual and customary policy most often involve situations where employees have followed the policy before—and are thus obviously aware of it—or are specifically directed to follow it after making an improper request for FMLA leave. *See Soutner v. Penn State Health*, 841 F. App'x 409, 414 (3d Cir. 2021) (finding an employee did not meet the notice requirement of her interference claim because she failed to follow the employer's policy for requesting leave despite being "specifically counseled" to do so); *Int'l Bhd. of Elec. Workers Loc. 1600 v. PPL Elec. Utilities Corp.*, No. 16-04675, 2017 WL 6547138, at *2 (E.D. Pa. Dec. 22, 2017) ("[The employee] had been informed that she needed to call [an FMLA administrator] on the day she took leave, and had previously had leave requests denied when she did not call [an FMLA administrator] as required."); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 612–13 (6th Cir. 2013) (finding an employee did not meet the notice requirement of his interference claim because he fully understood the "call-in line" he was required to use and had done so on multiple occasions before). This case presents neither scenario. Plaintiff here did everything that one expects an employee to do in order to invoke his rights to FMLA leave: he notified his supervisor, verbally and in writing, that his mother had a serious health condition and that he needed leave to care for her. His supervisor, in turn, did nothing. The supervisor did not direct Plaintiff to call the designated leave of absence administrator nor did he direct Plaintiff to human resources, nor does the record indicate that Plaintiff had followed this policy for requesting FMLA leave previously. In short, the record indicates that the supervisor did nothing in response to the Plaintiff's clearly stated need for FMLA leave. One must ask then what is the purpose of notification to the supervisor if the supervisor takes no action.

Finally, the Third Circuit has made clear that "the critical test is not whether the employee gave every necessary detail to determine if the FMLA applies, but how the information conveyed to the employer is reasonably interpreted. How the employee's notice is reasonably interpreted is generally a question of fact, not law." *Lichtenstein*, 691 F.3d at 303 (internal quotations and citations omitted).

Thus, viewing the evidence in a light most favorable to Plaintiff, the Court cannot say that Plaintiff failed to provide sufficient information to reasonably convey to Defendant that his request for leave suggested his need for leave under the FMLA such that the employer's duty to provide individualized notice was triggered.

That being said, the failure to provide individualized notice is not alone sufficient to show interference, Plaintiff must also show that he was prejudiced by the lack of notice. He can do so by demonstrating that "had [he] been properly informed of [his] FMLA rights, [he] could have structured [his] leave differently." *Lupyan*, 761 F.3d at 323 (citing *Conoshenti*, 364 F.3d at 145–146)). Here, Plaintiff has proffered evidence that had he been properly informed of his FMLA leave entitlements and requirement to return to work, he would have returned to work. Further, at no time during the month long period of time when Plaintiff was advising his employer that he was absent from work related to his grandmother did the employer advise him that his FMLA leave had expired upon the death of this mother and that he was required to return to work. Further at no time was the Plaintiff ever advised that his continued absences were unexcused. A reasonable jury could find that the failure to give Plaintiff individualized notice did in fact prejudice him and lulled him into believing his continued absence was protected under the FMLA. *See Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 638 (M.D. Pa. 2006) (finding that an employee could not show she was prejudiced because—even if she had received proper notice—

13

she was physically unable to return to work by the end of her FMLA-qualifying leave); *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 449–50 (W.D. Pa. 2008) (same). Whether or not Plaintiff would have returned earlier if he had received proper notice requires the evaluation of Plaintiff's credibility and as such is within the province of the factfinder. *Lupyan*, 761 F.3d at 323 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (noting that credibility determinations should not be made at the summary judgment stage)). In short, the Court finds that Plaintiff has put forth sufficient information from which a jury could find that he would have returned to work if he knew he would have been terminated and thus was prejudiced by the lack of notice.

For all these reasons, the Court denies Defendant's request for summary judgment as to Plaintiff's interference claim as it relates to the valid leave that Plaintiff was entitled to related to the care of his mother.

### D. Retaliation Claim

To prevail on a retaliation claim, an employee must prove that "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Lichtenstein*, 691 F.3d at 301–02. Again, Defendant does not dispute that Plaintiff was entitled to leave during the time he was caring for his mother until her death. Further, there is no dispute that Plaintiff suffered an adverse employment action when he was terminated. Thus the sole question is whether Plaintiff can establish that his termination was causally related to his invocation of his FMLA rights.

Retaliation claims are assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lichtenstein*, 691 F.3d at 302 ("Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law."). Under the *McDonnell Douglas*

framework, "a plaintiff must first establish a prima facie case of discrimination. If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 152 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014)).

To establish a prima facie case of causation, Plaintiff must "point to evidence sufficient to create an inference that a causative link exists between [his] FMLA leave and her termination." *Lichtenstein*, 691 F.3d at 307. Generally, to demonstrate a causal connection, a plaintiff must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Temporal proximity and evidence of antagonism "are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

Here, Plaintiff was entitled to FMLA leave to care for his mother until June 8, 2019, when she died. *Barone v. Leukemia Soc. of Am.*, 42 F. Supp. 2d 452, 460 (D.N.J. 1998) ("[B]ereavement leave or absence from work following the death of one's immediate family is not protected by the FMLA."). Plaintiff was terminated on July 29, 2019, less than two months after invoking his right

to FMLA-qualifying leave.[4] "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, courts typically consider periods of days or weeks, not months." *Dudhi v. Temple Health Oaks Lung Ctr.*, No. 18-3514, 2019 WL 426145, at *8 (E.D. Pa. Feb. 4, 2019) (quoting *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014)) (internal quotations omitted); *see Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 233 (D.N.J. 2015) (finding five days unduly suggestive); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (finding ten days unduly suggestive); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (finding over two months not unduly suggestive); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (finding three months not unduly suggestive). This Court does not find the approximate two-month gap between the protected activity and adverse employment action unduly suggestive and, therefore, Plaintiff must show some other evidence to establish the necessary causal connection to sustain his retaliation claim. Plaintiff has not put forth, and the record does not reveal any evidence from which this Court could find a pattern of antagonism.

The Court recognizes that the Plaintiff was likely unable to make an informed decision as to when to return to work due to Defendant's failure to provide the individualized notice required as to his FMLA rights as discussed above. Defendant failed to communicate with Plaintiff at the most basic level—it neither directed him to return to work nor advised him of his risk of termination. Further compounding this situation, when Plaintiff communicated his intent to return

---

[4] Third Circuit precedent dictates that courts measure temporal proximity from the "last protected activity." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) (retaliatory action occurred "[s]everal months after [the plaintiff's] last protected activity" along with other evidence of antagonism is sufficient to allege a causal connection); *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 (3d Cir. 2016) (analyzing temporal proximity based on last instance of protected activity). In this case, that would be the last date of qualifying FMLA leave.

to work on several occasions Defendant did not respond except to terminate his employment on July 29, 2019. However, "the question is not whether [the employer's] decision was wrong or mistaken but whether [the employer] acted with discriminatory animus." *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 557 (3d Cir. 2009) (citing *Geddis v. Univ. of Del.*, 40 Fed. Appx. 650, 652 (3d Cir. 2002)). Thus, while the Court finds that Defendant's deficient communication is sufficient to state a viable FMLA interference claim, there is no evidence of retaliatory animus sufficient to show causation for an FMLA retaliation claim. The Court will therefore grant Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, (ECF No. 38), is granted as to Plaintiff's retaliation claim and denied as to Plaintiff's interference claim. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**