**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

**DANA BLAKE,**

**Plaintiff,**

**v.**

**ALSTOM TRANSPORTATION INC.,**

**Defendant.**

**Civil No. 20-13603 (CPO/SAK)**

**OPINION AND ORDER**

This matter is before the Court on the letter application to reopen discovery [ECF No. 52] submitted by Defendant Alstom Transportation Inc. The Court received the opposition of Plaintiff Dana Blake [ECF No. 54] and Defendant's reply [ECF No. 57]. The Court exercises its discretion to decide Defendant's application without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Defendant's application is **GRANTED**.

## I. BACKGROUND

Plaintiff filed this action on September 30, 2020 asserting claims against Defendant for interference and retaliation pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq. See generally* Compl. [ECF No. 1]. Plaintiff was employed by Defendant from approximately September 2015 until his termination on July 29, 2019. *See id.* ¶ 10. On or about May 29, 2019, Plaintiff alleges that his mother was diagnosed with cancer. *See id.* ¶ 12. Plaintiff further alleges that he was providing care to his elderly grandmother at the time of his mother's diagnosis. *See id.* Shortly thereafter, Plaintiff contacted his supervisor to request a leave of absence pursuant to the FMLA to provide care for his mother and grandmother. *See id.* ¶ 13. Plaintiff's supervisor allegedly approved the request but also advised Plaintiff that his leave would be unpaid.

*See id.* ¶ 14. Plaintiff contends that he requested the necessary paperwork to complete his request, but Defendant never provided it. *See id.* ¶¶ 14–15. Plaintiff also contends that Defendant failed to advise him of his rights under the FMLA, including information on the maximum duration of his leave. *See id.* ¶ 15. Plaintiff's mother passed away in early June of 2019, but he stayed on leave to purportedly care for his grandmother. *See id.* ¶ 16. On or about July 24, 2019, Plaintiff allegedly contacted his supervisor to advise that he anticipated returning to work on or about July 29, 2019. *See id.* ¶ 17. On or about July 29, 2019, however, Plaintiff was "abruptly terminated . . . allegedly due to 'excessive absences.'" *Id.* ¶ 18. Accordingly, Plaintiff's Complaint asserted that Defendant unlawfully terminated Plaintiff's employment by interfering with his ability to exercise his rights under the FMLA and/or in retaliation for exercising his rights under the FMLA. *See id.* ¶ 19.

During discovery, Defendant sought production of certain medical and psychiatric records of Plaintiff. *See* Def.'s Letter, Oct. 14, 2021, at 1 [ECF No. 28]. Specifically, Defendant sought Plaintiff's medical records from the VA Medical Center ("VA") and Dr. Nayak, Plaintiff's psychiatrist at the VA. *See id.* at 1–2. Defendant's request was denied on November 4, 2021. *See* Order ¶ 1 [ECF No. 32]. Noting Plaintiff claimed he was terminated for taking leave to care for ailing family members and Defendant alleging that termination was based on excessive absences, the Court found Plaintiff's medical records were not sufficiently probative of the parties' claims and defenses so as to warrant the intrusion into Plaintiff's privacy interest in these records.

Defendant later moved for summary judgment as to all claims. *See* Def.'s Mot. Summ. J. [ECF No. 38]. On November 28, 2022, the Honorable Christine P. O'Hearn, U.S.D.J, granted Defendant's motion as to Plaintiff's retaliation claim but denied it as to his interference claim. *See* Op. [ECF No. 48]; Order [ECF No. 49]. More specifically, Judge O'Hearn found that Plaintiff was not entitled to FMLA-qualifying leave following the death of his mother on June 8, 2019. *See*

Op. at 8 (finding "Plaintiff fail[ed] to show that his grandmother suffered a serious health condition which would entitle him to FMLA benefits for the time period after his mother died"). While Defendant "was not required to notify Plaintiff that his FMLA leave terminated upon the death of his mother, this [did] not excuse [Defendant's] failure to provide the initial individualized notice to Plaintiff that he in fact qualified for FMLA leave, the terms of such leave, and his obligations related to such leave." *Id.* at 10 (internal citation omitted). In this regard, Judge O'Hearn found that Plaintiff had "proffered evidence that had he been properly informed of his FMLA leave entitlements and requirement to return to work, he would have returned to work." *Id.* at 13. In other words, "[a] reasonable jury could find that [Defendant's] failure to give Plaintiff individualized notice did in fact prejudice him and lulled him into believing his continued absence was protected under the FMLA." *Id.* Judge O'Hearn noted, however, that the question of whether Plaintiff would have actually returned to work earlier if he had received proper notice requires an "evaluation of Plaintiff's credibility" and, as such, was an issue left for the jury. *Id.* at 14.

While the above motion was pending, in late October of 2022, Plaintiff sought to have Defendant complete a VA form on Plaintiff's behalf. *See* Def.'s Appl. at 2. Following a series of communications amongst counsel, through whom the request was made, it was determined that Plaintiff "had submitted an Application for Increased Compensation Based on Unemployability, Form 8940, to the Veteran's Administration." *Id.* Defense counsel received a copy of the form on November 14, 2022. The form, which was signed by Plaintiff on June 28, 2022, reads in part:

> **IMPORTANT:** This is a claim for compensation benefits based on unemployability. When you complete this form you are claiming total disability due to a service-connected disability(ies) which has/have prevented you from securing or following any substantially gainful occupation. Answer all questions fully and accurately.

Ex. A to Def.'s Appl., at 1 [ECF No. 52-1]. Section II of the form, regarding disability and medical treatment, asks the applicant to explain: "What service-connected disability prevents you from securing or following any substantially gainful occupation?" *Id.* Plaintiff responded, "depression and panic attacks." *Id.* He also identified Dr. Nayak and the VA Medical Center as his doctor and hospital within the same section. *See id.* In addition, Plaintiff identified his dates of treatment as "10-10-2019 to 06-10-2022." *Id.* In Section III of the form, the applicant is asked to identify the "[d]ate your disability affected full-time employment." *Id.* Plaintiff responded, "07-01-2019." *Id.* The applicant is then asked for the "[d]ate you became too disabled to work." *Id.* Plaintiff responded, "08-10-2019." Section V asks the applicant to provide "any additional information, if needed." *Id.* at 4. Plaintiff provided the following:

> Hello, I am currently self-employed. My wife and i own a rental property and i own another 1 with a business partner. i have not been able to gain full time employment due to depression and panic attacks along with anxiety insomnia and fatigue. I have not been gainfully employed since July of 2019. i have tried to find employment but do to depression and panic attacks i have not been able to properly interview for a job. my depression and anxiety makes the interview process very intimidating in which i [sic] am unable to concentrate. i forget simple answers to questions and things in general ,all of this become very frustrating and effects my whole lifestyle and my families. on top of that i am also have degenerative back disease which causes me continuous pain which multiples the affects of my depression. The financial instability that my that all this has caused is very troubling and hard for me to deal with.

*Id.* at 4 (alterations and errors in original). Lastly, Section VI provides as follows:

> **CERTIFICATION OF STATEMENTS: I CERTIFY THAT** as a result of my service-connected disabilities, I am unable to secure or follow any substantially gainful occupation and that the statements in this application are true and complete to the best of my knowledge and belief. I understand that these statements will be considered in determining my eligibility for VA benefits based on unemployability because of service-connected disability.

*Id.*

Based on the foregoing, Defendant now seeks to reopen discovery aimed at determining whether Plaintiff would have, and could have, returned to work had he received proper notice. *See* Def.'s Appl. at 4. Defendant contends that the Form 8940 indicates otherwise. Defendant asserts that Plaintiff's statements show his "service-connected disabilities and medical conditions were the reason that he failed to return to work, not [Defendant's] alleged failure to provide individualized notice of his FMLA rights." *Id.* Defendant further asserts that Plaintiff's statement that he was too disabled to work as of August 10, 2019, by itself, is "relevant and material to the calculation of damages should Plaintiff prevail on his interference claim." *Id.* Accordingly, Defendant maintains that good cause exists to modify the schedule in this matter and reopen discovery. Specifically, Defendant seeks to redepose Plaintiff "on the narrow topic of [his] service-related disability and its effect on his ability to work after July 1, 2019." *Id.* at 6. Defendant also asks the Court to vacate its November 4, 2021 Order denying Defendant's request to compel Plaintiff's medical and psychiatric records from Dr. Nayak and the VA Medical Center. *Id.*

Plaintiff opposes the application. Plaintiff generally argues that Defendant's request is inappropriate and unnecessary. *See* Pl.'s Opp'n. Specifically, Plaintiff argues "Defendant has had ample opportunity to explore these issues during months of discovery" and "has already questioned Plaintiff regarding his ability and willingness to return to work." *Id.* at 2. Plaintiff also argues that the entries in the above-detailed form do "not indicate that Plaintiff was unwilling or unable to return to work for Defendant in July of 2019." *Id.* at 2–3. Rather, Plaintiff argues the entries merely "demonstrate that Plaintiff sought work unsuccessfully following his termination from Defendant and sought benefits more than a year thereafter, albeit backdated to the time of his unemployment." *Id.* at 3. Plaintiff concedes that "[a] jury could certainly consider the [form] in assessing Plaintiff's credibility" on the issue of whether he would, or would not, have returned to work. *Id.* However,

Plaintiff contends it is inappropriate to reopen discovery on this issue "for the simple reason that the determination . . . is a credibility issue to be decided by a jury." *Id.* Plaintiff further contends "[t]here is no discovery that Defendant could take that would change this reality." *Id.*

Defendant asserts that Plaintiff's arguments against reopening discovery actually weigh in favor of its application. *See* Def.'s Reply. Defendant reiterates that the core issue in this case revolves around Plaintiff's credibility with respect to his ability to return to work. *Id.* at 1. Plaintiff has introduced new evidence into the case that "calls into question" the basis for him not returning to work, as well as the extent of his alleged damages. *See id.* Thus, Defendant maintains that it has shown good cause to reopen discovery because the information sought is relevant and material to the issue of whether or not Plaintiff was prejudiced by the lack of individualized notice.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 16 governs pretrial matters, including case management and scheduling orders. The rule vests district courts "with broad discretion to control and manage discovery." *Cevdet Aksüt Oğullari Koll, STI v. Cavusoglu*, No. 14-3362, 2017 WL 3013257, at *4 (D.N.J. July 14, 2017) (citations omitted). Pursuant to Rule 16(b)(4), scheduling orders may only be modified to reopen discovery "for good cause and with the judge's consent." *See, e.g.*, *Goldrich v. City of Jersey City*, No. 15-885, 2018 WL 3360764, at *1 (D.N.J. July 10, 2018) (citations omitted). "The good cause standard 'is not a low threshold.'" *Id.* (citation omitted). Accordingly, courts have considered the following factors in evaluating whether discovery should be reopened: (1) the good faith and diligence of the moving party; (2) the importance of the evidence; (3) the logistical burdens and benefits of reopening discovery; and (4) prejudice to the nonmoving party.

*See id.* "The importance of the evidence is often the most significant factor." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (citation omitted).

**B. Analysis**

In this case, the Court finds that good cause exists to reopen discovery. The discovery that Defendant now seeks was first sought during pretrial discovery, although its true existence and relevance only became apparent after the close of discovery. Upon receipt of the newly discovered evidence provided by Plaintiff, Defendant acted diligently and in good faith in pursuing its options and raising the issue with the Court. Furthermore, while the importance of the evidence is clear and not in dispute, the circumstances surrounding the timing of its production only increased the gravity of the situation. Following Judge O'Hearn's ruling on Defendant's motion for summary judgment, it became clear that Plaintiff's credibility would be a critical issue at trial. Therefore, the Court finds that the statements Plaintiff made on the subject form shed light on the significance of the related evidence that Defendant now seeks. As such, the Court finds the first two factors weigh in favor of reopening discovery.

As to the third factor—the logistical burdens and benefits, the Court finds that this factor also weighs in favor of reopening discovery. The Court acknowledges that reopening discovery creates logistical burdens—namely, by delaying discovery, particularly at the post-summary judgment stage. However, the Court finds that these logistical burdens are far outweighed by the benefits presented. Defendant will benefit because the limited discovery it seeks will afford it a full and fair opportunity to challenge Plaintiff's credibility and defend itself at trial. Moreover, the Court notes that Plaintiff failed to address this issue in his opposition brief. In fact, Plaintiff failed to address any of the requisite factors in his brief.

As to the fourth factor—prejudice to the nonmoving party, the Court finds any prejudice to Plaintiff is outweighed by the importance of the evidence sought. The Court also notes that a trial date has not yet been scheduled. Accordingly, the Court finds the foregoing factors weigh substantially in favor of reopening discovery.

In light of the credibility issues raised by the discovery of the VA form, as discussed above, the Court finds that Plaintiff's medical, including psychiatric, records to be highly probative and discoverable. As such, Defendant's renewed application for these records will be granted.

## III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **19th** day of **May**, **2023**, that Defendant's application to reopen discovery [ECF No. 52] is **GRANTED**; and it is further

**ORDERED** that fact discovery in this matter is **REOPENED** to **June 30, 2023** and limited strictly to the subject matter and materials that follow; and it is further

**ORDERED** that paragraph 1 of the Court's November 4, 2021 Discovery Dispute Order [ECF No. 32] denying Defendant's request to compel the production of Plaintiff's medical and psychiatric records is **VACATED**. Plaintiff shall execute and return authorizations for the release these records to Defendant by **May 26, 2023**; and it is further

**ORDERED** that, on or before **June 30, 2023**, Plaintiff shall appear for redeposition on the narrow topic of his service-related disabilities, and his communications and applications to the Department of Veterans Affairs for compensation based on unemployability.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc: Hon. Christine P. O'Hearn, U.S.D.J.